**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MOISES RONE,

                    Petitioner,

    – against –

UNITED STATES OF AMERICA,

                    Defendant.

**OPINION AND ORDER**

15 Civ. 1417 (ER)
15 Civ. 5770 (ER)
12 Crim. 480 (ER)

RAMOS, D.J.:

      Moises Rone brings these petitions to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Rone asserts that he was denied his Sixth Amendment right to counsel because his lawyer provided ineffective assistance during plea negotiations with the United States Government (the "Government"), which culminated in the sentence that Rone now challenges.  For the reasons stated below, the petitions are DENIED.

**I.**      **Factual Background**

    **A.  Rone's Charges**

      Rone participated in a criminal conspiracy that involved the cloning of cellular telephones ("phones").  Rone and his co-conspirators illegally obtained phone "identifiers"— unique numbers that wireless carriers use to identify specific mobile phones—and then reprogrammed these identifiers into numerous other phones in their possession.  The co-conspirators then sold the ability to route international calls through these cloned phones.  The leader of the conspiracy defrauded one foreign company of nearly two million dollars through this scheme, and Rone also monetarily profited from the scheme, though to a much lesser degree. 15 Civ. 5770, Doc. 8 at 2-4.  As Rone explained during his plea, the code numbers that he obtained belonged to legitimate customers, "were a means of identification of another person,

because they were unique to the customer and his or her phone," and were used "without authorization."  15 Civ. 5770, Doc. 8, Ex. 2 ("Plea Transcript") at 20.

An Indictment charged Rone and three co-defendants with conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343, 1349 and with aggravated identify theft in violation 18 U.S.C. § 1028A (the "Indictment").  12 Crim. 480, Doc. 68.  The Indictment also sought forfeiture.  *Id.*

**B.  The Plea Agreement**

On March 19, 2013, Rone pleaded guilty to both counts of the Indictment, pursuant to a plea agreement with the Government dated February 24, 2013 (the "Plea Agreement").  15 Civ. 5770, Doc. 8, Ex. 1.  Plea Transcript at 15–22.  The Plea Agreement noted that Rone faced a maximum term of imprisonment of 22 years, with a mandatory minimum term of two years.  Plea Agreement at 2.  The parties agreed in the Plea Agreement that, as to Count One, Rone's offense level included certain enhancements, including a four-level enhancement because the loss amount was between $10,000 and $30,000.  *Id.* at 2–3.  The parties further agreed that, as a result of his offense conduct and criminal history, Rone's stipulated Sentencing Guidelines range was 39 to 45 months' imprisonment ("the Stipulated Guidelines Range")—specifically, 15 to 21 months on Count One, followed by a mandatory and consecutive 24-month term on Count Two.  *Id.* at 3–4.  Under the Plea Agreement, the Government agreed to waive its right to appeal any sentence within or above the Stipulated Guidelines Range; and Rone agreed to waive his right to a direct appeal and "a collateral challenge," including motions pursuant to 28 U.S.C. §§ 2241 or 2255, for any sentence within or below the Stipulated Guidelines Range.  *Id.* at 5.  The Plea Agreement also provided that "[t]he defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty."  *Id.*

The parties also agreed in the Plea Agreement to restitution in the amount of $11,115.12, and Rone consented to the entry of the Consent Order of Forfeiture annexed to the Plea Agreement as Exhibit A.  The Government agreed not to appeal any restitution or forfeiture amount that was greater than or equal to $11,115.12, and Rone agreed not to appeal any restitution or forfeiture amount that was less than or equal to $11,115.12.  *Id.* at 5.

The Plea Agreement also contained the following paragraph addressing the immigration consequences of Rone's plea:

> The defendant recognizes that because he is not a citizen of the United States, his guilty plea and conviction make it very likely that his deportation from the United States is presumptively mandatory and that, at a minimum, he is at risk of being deported or suffering other adverse immigration consequences.  The defendant acknowledges that he has discussed the possible immigration consequences (including deportation) of his guilty plea and conviction with defense counsel.  The defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction, even if those consequences include deportation from the United States.  It is agreed that the defendant will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences (including deportation) resulting from the guilty plea and conviction.  It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including deportation) resulting from his guilty plea and conviction.

*Id*. at 6.  In this paragraph, Rone expressly acknowledged that his deportation was "presumptively mandatory," and he agreed to waive the right to challenge his conviction or sentence due to "immigration consequences (including deportation)."  *Id.*

### C.  The Plea Proceeding

During the plea proceeding, the Court conducted a thorough allocution that complied in all respects with Rule 11 of the Federal Rules of Criminal Procedure.  Among other things, the Court confirmed that:  (1) Rone was competent to enter a plea of guilty, Plea Transcript at 3–4; (2) Rone had had "a full opportunity" to discuss the case with his attorney, including the

consequences of pleading guilty, *id.* at 4; (3) Rone was aware of the constitutional rights he was waiving by entering such a plea, *id.* at 5–7; (4) Rone was aware of the charges against him and the maximum penalties associated with those charges, *id.* at 7-11; (5) Rone understood the consequences of a guilty plea, *id.* at 11-13; and (6) a factual basis existed for the plea, *id.* at 17-21.

Importantly, the Court engaged in a lengthy colloquy with Rone and defense counsel about the immigration consequences of Rone's plea:

COURT: Sir, are you an American citizen?

RONE:  No, your Honor.

COURT: Mr. Calhoun, have you advised Mr. Rone about the possible immigration consequences of entering a plea of guilty to the charges in the indictment?

MR. CALHOUN: I have, your Honor.

COURT: Mr. Rone, has your lawyer advised you as to the possible immigration consequences of your plea?

RONE: Yes, your Honor.

COURT: Do you understand that there could be adverse immigration consequences including possible deportation as a result of your plea?

RONE: Yes, your Honor.

COURT: Do you understand that if there are immigration consequences, you will not be allowed to withdraw your plea or appeal or otherwise challenge your conviction on the basis of those consequences?

RONE: Yes, your Honor.

COURT: Do you understand that in all likelihood you will be deported from the United States after you serve your sentence?

RONE: Yes, your Honor.

4

> COURT: Do you understand that if for some reason you are not deported or if after serving your sentence you are held in the U.S. pending deportation, you will be subject to supervised release?
>
> RONE: Yes, your Honor.
>
> COURT: Do you understand that even if you are deported, returning to the United States during your period of supervised release without permission from the U.S. Department of Homeland Security would be not only a separate crime, but a violation of your conditions of supervised release, and you could be sent back to prison without a trial?
>
> RONE: Yes, your Honor.
>
> COURT: And do you understand that the same would be true of any crime committed while in custody pending deportation?
>
> RONE: Yes, your Honor.

*Id.* at 12–13.

The Court then confirmed that Rone had read the Plea Agreement, that it was translated for him, that he had discussed it with his attorney before signing it, that it contained all of his understandings with the Government, and that he had signed it.  *Id.* at 15–17.  The Court further confirmed that Rone had discussed the Sentencing Guidelines and the sentencing statute with his attorney.  *Id.* at 13–15.  In addition, the Court confirmed that Rone understood that, as per the Plea Agreement, his appellate rights were limited if his sentence was "within or below a particular range."  *Id.* at 17.  The Court also confirmed that Rone's plea was knowing and voluntary and that it was made without any threat or coercion.  *Id.* at 17–18

Finally, the Court asked, as to each Count, "Are you pleading guilty voluntarily and of your own free will?"  *Id.* at 22.  As to both Counts, Rone replied, "Yes, your Honor."  *Id.*  The Court also asked Rone if he admitted the forfeiture allegation, and he replied, "Yes, your Honor."  *Id.* at 21.  The Court then accepted Rone's plea.  *Id.* at 23.

**D.  Sentencing**

Rone was sentenced on October 24, 2013.  12 Crim. 480, Doc. 89 ("Sentencing Transcript").  At sentencing, this Court calculated a total offense level of fourteen and a criminal history category of one, resulting in a Sentencing Guidelines range of fifteen to twenty-one months of imprisonment on Count One, to be followed by a mandatory and consecutive two-year term on Count Two.  *Id.* at 4-5.  Thus, the combined Sentencing Guidelines range was thirty-nine to forty-five months of imprisonment.  *Id.* at 5.  Prior to imposing sentence, the Court considered the submission of defense counsel, heard from Rone's attorney and the Government, and from Rone himself.  *Id.* at 5–23.  During both defense counsel's and the Government's statements, the Court raised the issue of the loss amount of approximately $11,000.  *Id.* at 15, 20–21.  The Government explained that a single email sent as part of the scheme provided the basis for the loss amount and that it did not know whether Rone had caused additional losses.  *Id.* at 15.  The Court sentenced Rone to a below-guidelines range of twenty-eight months, followed by two years of supervised release.  *Id.* at 24.

**II.  Procedural History**

On February 23, 2015, Rone filed *pro se* a three-page document titled "Notice to File a Petition Under 28 U.S.C. § 2255 for Writ of Habeas Corpus."  15 Civ. 1417, Doc. 1.  He requested an extension of time to file a § 2255 Motion and Memorandum of Law and alleged that he was entitled to habeas relief because he had received ineffective assistance of counsel in the underlying criminal proceeding.  *Id.*  On March 11, 2015, the Court dismissed the petition without prejudice because it did not contain any substantive grounds for relief under 28 U.S.C. § 2255.  *Rone v. United States*, No. 15 Civ. 1417 (ER), 2015 WL 12999721, at *1 (S.D.N.Y. Mar. 11, 2015).  Rone appealed that decision, and on November 18, 2015, the Second Circuit remanded the case to be decided on the merits.  15 Civ. 1417, Doc. 7.

6

On July 20, 2015, while his appeal was pending, Rone filed *pro se* a document titled "Writ of Audita Querela."  15 Civ. 5770, Doc. 1.  This document, which included exhibits and totaled over ninety pages, argued that Rone's underlying criminal conviction should be vacated because he received ineffective assistance of counsel.  The Court ordered the Government to answer the petition and appointed a habeas counsel.  *Id.*, Doc. 3.  Extensive briefing followed: the Government opposed the petition, *id.*, Doc. 8; Rone, with the aid of habeas counsel, asked the Court to consider Rone's writ of audita querela as a writ of error coram nobis, *id.*, Doc. 9; the Government opposed once more, *id.*, Doc. 13; and Rone filed a sur-reply, *id.*, Doc. 16.

These three documents—the notice to file a petition under 28 U.S.C. § 2255 for a writ of habeas corpus, the petition for a writ of audita querela, and the petition for a writ of error coram nobis—all seek to vacate Rone's sentence because he received ineffective assistance of counsel.

## III.   Standard

Section 2255 enables a prisoner sentenced by a federal court to petition the sentencing court to vacate, set aside, or correct the sentence.  28 U.S.C. § 2255(a).[1]  Such a motion must allege that (1) the sentence violated the Constitution or the laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence "is otherwise subject to collateral attack."  *Id.*

---

[1] Rone asks the Court to regard his writ of *audita querela* as a writ of error *coram nobis*.  15 Civ. 5770, Doc. 9 at 1 n.1.  The writ of *coram nobis* "is an 'extraordinary remedy,' authorized under the All Writs Act, 28 U.S.C. § 1651(a), generally sought to review a criminal conviction where a motion under 28 U.S.C. § 2255 is unavailable because petitioner is no longer serving a sentence."  *Porcelli v. United States*, 404 F.3d 157, 158 (2d Cir. 2005) (internal citation omitted).  A writ of *coram nobis* is not a proper vehicle in this case.  The Second Circuit has held that "the habeas corpus statute confers jurisdiction to district courts to entertain habeas petitions for relief solely from persons who satisfy the status or condition of being 'in custody' at the time the petition is filed, and a petitioner under supervised release may be considered 'in custody.'"  *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994).  Rone filed his original petition on July 20, 2015.  Rone's supervised release did not expire until approximately February 20, 2016.  15 Civ. 5770, Doc. 8 at 20 n.9.  As a result, the Court considers his petition under 28 U.S.C. § 2255.

"[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

An evidentiary hearing shall be granted with respect to a Section 2255 petition "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). To avoid summary dismissal without the benefit of a hearing, a petitioner is required to establish only that his claim is plausible. *See Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000)). However, if the record contradicts the petitioner's factual assertions, the court is not required to assume that the claims are credible. *Id.* at 214. After it has reviewed both the petitioner's submissions and the underlying record,

> [t]he court then determines whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a *prima facie* case for relief. If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made.

*Id.* at 213.

"A defendant in criminal proceedings has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings, which include entry of a plea of guilty, and sentencing." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (internal citations omitted). To succeed on a claim of ineffective assistance of counsel, a claimant must satisfy the two-part test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> Under *Strickland*, in order to prevail on an ineffective-assistance-of-counsel claim, a defendant must meet a two-pronged test: (1) he 'must show that counsel's performance was deficient,' so deficient that, 'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance,' and (2) he must show 'that the deficient performance prejudiced the defense,' in the sense that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"

*Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (quoting *Strickland*, 466 U.S. at 687, 690, 694); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (applying *Strickland* to guilty pleas).

Under the first prong of *Strickland*, the Court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. The Court "must make 'every effort to eliminate the distorting effects of hindsight,' and 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Bell v. Miller*, 500 F.3d 149, 156 (2d Cir. 2007) (quoting *Strickland*, 466 U.S. at 689). The convicted defendant is required to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and the court "must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Under the second prong of *Strickland*, the petitioner must establish prejudice. "To establish prejudice, a petitioner 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Kovacs v. United States*, 744 F.3d 44, 51 (2d Cir. 2014) (quoting *Strickland*, 466 U.S. at 694).

To satisfy reasonable probability, "the defendant must show more than that the unprofessional performance merely had some conceivable effect . . . [;] however, a defendant *need not show* that counsel's deficient conduct *more likely than not* altered the outcome in the case." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (internal quotation marks and citations omitted).

"In the plea bargain context, the petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances, or that there is a reasonable probability that he could have negotiated a [more favorable] plea . . . or that he would have litigated an available defense." *Whyte v. United States*, No. 08 Crim. 1330 (VEC), 2015 WL 4660904, at *5 (S.D.N.Y. Aug. 6, 2015) (internal quotation marks and citations omitted); *see also Missouri v. Frye*, 566 U.S. 134, 147 (2012) ("To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."); *Dorfmann v. United States*, 597 F. App'x 6, 8 (2d Cir. 2015) (requiring proof that petitioner "would have insisted on trial or been able to secure a better plea bargain"). Courts must also "keep in mind that 'a defendant has no right to be offered a plea, nor a federal right that the judge accept it.'" *Kovacs*, 744 F.3d at 51 (quoting *Frye*, 566 U.S. at 148–49).

Importantly for this case, counsel must inform a non-citizen client of possible immigration consequences of a guilty plea. *Padilla v. Kentucky*, 559 U.S. 356, 368–69 (2010). When it is "truly clear" that deportation will result from a guilty plea, "the duty to give correct advice is equally clear." *Id.* "[I]ncorrect advice about the immigration consequences of a plea is prejudicial if it is shown that, but for counsel's unprofessional errors, there was a reasonable probability that the petitioner could have negotiated a plea that did not impact immigration status or that he would have litigated an available defense." *Kovacs*, 744 F.3d at 52.

**IV.     Discussion**

Rone argues that the he is entitled to an evidentiary hearing because his trial counsel was ineffective in three ways:  (1) his trial lawyer did not determine the proper amount of restitution, 15 Civ. 5770, Doc. 9 at 13–23; (2) his trial lawyer did not properly advise him about the immigration consequences of his plea, *Id.* at 24–35; and (3) his trial counsel did not properly investigate his case.  The Court will consider each of these arguments in turn.

**A.     Restitution Order**

Rone claims that his trial attorney miscalculated the amount of restitution by relying on the Sentencing Guidelines' estimation of loss and not the more exacting calculation provided by the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A (the "MVRA").  Under the relevant portion of the sentencing guidelines, the court "need only make a reasonable estimate of the loss" based on the fair market value of the property, the cost of developing the property, the cost of repairing the property, and other factors.  U.S. Sentencing Comm'n, *U.S. Sentencing Guidelines Manual* § 2B1.1, cmt. 3(c) (2018), https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2018/GLMFull.pdf.  Under the MVRA, in fraud cases like Rone's, the order of restitution must require the defendants to return the property to the rightful owner.  18 U.S.C. § 3663A(b)(1)(A).  If returning the property is not possible, practicable, or adequate, the order must require the defendant to pay an amount equal to the greater of "the value of the property on the date of the damage, loss, or destruction" or "the value of the property on the date of sentencing, less . . . the value (as of the date the property is returned) of any part of the property that is returned."  18 U.S.C. § 3663A(b)(1)(B).

In this case, Rone agreed to forfeit $11,115.12, the damages caused by the fraud, and the Court entered a restitution order in that amount.  Plea Agreement at 2 (explaining the basis for

11

the forfeiture); Sentencing Transcript at 24.  Rone argues that his trial attorney should have asked for a lower amount under the MVRA because Rone returned the unique identifiers and because the phone service provider billed standard charges on all calls, regardless of whether they were fraudulent.[2]  (Rone has not explained the monetary value of these losses.)

Even if such an argument under the MVRA existed and would have been beneficial to Rone, Rone's lawyer would not be constitutionally ineffective simply by failing to raise it.  As the Supreme Court has recognized, "the Constitution guarantees criminal defendants only a fair trial and a competent attorney.  It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."  *Engle v. Isaac*, 456 U.S. 107, 134 (1982).

More importantly, if Rone's counsel had asked the Court to issue a restitution order pursuant to the MVRA, the Court may have ordered even more restitution than it had initially ordered.  Indeed, as the Government notes, the restitution order did not account for other related losses considered by the MVRA, such as the costs of investigating the fraud, additional customer service to retain customers, lost customers, and additional security.  *See, e.g.*, *United States v. Maynard*, 743 F.3d 374, 381 (2d Cir. 2014) (finding that victim's internal investigation costs were recoverable under the MVRA when victim is "faced with evidence, indicia, or a grounded suspicion of internal misconduct").[3]

For these reasons, Rone has not shown that his trial counsel was deficient in not challenging his restitution order or that this prejudiced him in any way.

---

[2]  Rone also writes that the Court did not address "a number of other relevant set-offs," but he fails to provide any further details on this point.  15 Civ. 5770, Doc. 9 at 19.

[3]  Rone does not respond to this argument other than by dismissing it wholesale.  He writes, "[t]his assertion lacks any detail to which Mr. Rone can now meaningfully respond as there has been no accounting of those costs that would be fairly attributable to him."  15 Civ. 5770, Doc. 16 at 21 n.7.

**B.      Immigration Consequences**

Rone next argues that his trial counsel was ineffective for failing to inform him about the immigration consequences of pleading guilty.  15 Civ. 5770, Doc. 9 at 24–35.  The record flatly refutes this.  On approximately March 19, 2013, Rone signed a Plea Agreement. The Plea Agreement extensively discussed the immigration consequences of Rone's plea.  Plea Agreement at 6.  Specifically, the Plea provided that "his guilty plea and conviction make it very likely that his deportation from the United States is presumptively mandatory."  *Id.*  It further provided that, "defendant acknowledges that he has discussed the possible immigration consequences (including deportation) of his guilty plea and conviction with defense counsel."  *Id.*

During his plea allocution, Rone confirmed this understanding:  Rone and his trial counsel both stated that he had been advised as to the immigration consequences of entering a guilty plea.  Pleading Transcript at 12–13.  To ensure that Rone fully understood his counsel's advice, the Court asked Rone, "Do you understand that in all likelihood you will be deported from the United States after you serve your sentence?"  *Id.* at 12.  Rone answered, "Yes, your honor."  *Id.*

The trial counsel's sworn affidavit corroborates Rone's statements in court.  The trial counsel affirmed that he discussed deportation several times with Rone and informed him that "deportation is a part of this" and "you have to expect to be deported" as a result of the guilty plea.  12 Crim. 480, Doc. 139, Ex. C ¶ 8.  He further affirmed that he and Rone reviewed the Plea Agreement "word-for-word."  *Id.* ¶ 22.

For these reasons, Rone has not shown that his trial counsel was ineffective for failing to inform him about the immigration consequences of pleading guilty.[4]

---

[4] In his *pro se* brief, Rone claims that his lawyer affirmatively misrepresented the immigration consequences of pleading guilty.  15 Civ. 5770, Doc. 1 at 23–25.  As explained above, the record establishes otherwise.

C.      **Investigation**

Finally, Rone argues that his counsel was constitutionally ineffective because he did not properly investigate his case. 15 Civ. 5770, Doc. 1 at 25–26.[5]  A petitioner may satisfy *Strickland*'s first prong by arguing that the trial-counsel failed to investigate his case.  However, "a petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation." *Taylor v. Poole*, No. 07 Civ. 6318 (RJH) (GWG), 2009 WL 2634724, at *14 (S.D.N.Y. Aug. 27, 2009), *report and recommendation adopted*, No. 07 Civ. 6318 (RJH) (GWG), 2011 WL 3809887 (S.D.N.Y. Aug. 26, 2011).  As the Government correctly notes, Rone has not identified a single piece of exculpatory evidence and has, instead, made broad statements of inadequacy.  Doc. 8 at 13. Accordingly, Rone has failed to show that his trial counsel was ineffective for failing to investigate his case or that this prejudiced him in any way.

D.      **Plea Agreement**

Rone's Plea Agreement provides another and independent reason for denying his petition without an evidentiary hearing.  In his Plea Agreement, Rone expressly agreed

> [N]ot [to] file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 39 to 45 months' imprisonment.

Plea Agreement at 5.  Rone's sentence was 28 months of imprisonment.  It is true that "a plea agreement containing a waiver of the right to appeal is not enforceable where the defendant claims that the plea agreement was entered into without effective assistance of counsel." *United*

---

[5] In his counseled reply, Rone argues that the trial counsel was ineffective because he failed to investigate the difference between the Sentencing Guidelines and the MVRA.  15 Civ. 5770, Doc. 9 at 30–33.  The Court addresses that issue above.

*States v. Hernandez,* 242 F.3d 110, 113–14 (2d Cir. 2001).  However, "[w]here the record reveals that the waiver was knowing and voluntary, and that there is no merit to the ineffective assistance claim, the waiver should be enforced."  *Muniz v. United States*, 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005) (citing *United States v. Monzon*, 359 F.3d 110, 119 (2d Cir. 2004)).

For the reasons explained above, there is no merit to Rone's ineffective assistance of counsel claim.  Moreover, there is no evidence in the record that his waiver was anything but knowing and voluntary.  Indeed, he confirmed at his plea allocution that he understood that he could lose his ability to challenge his sentence if it was within a certain range.  Plea Transcript at 17.  "This colloquy adequately establishes that defendant understood the terms of his waiver in the plea agreement."  *United States v. DeJesus*, 219 F.3d 117, 121 (2d Cir. 2000); *see also Hernandez*, 242 F.3d at 112 (noting that "the district court was entitled to rely upon the defendant's sworn statements, made in open court with the assistance of a translator, that he understood the consequences of his plea").

## V.    Conclusion

For the foregoing reasons, the Petitions are DENIED.  The Clerk of Court is respectfully directed to close cases 15 Civ. 1417 and 15 Civ. 5770.

SO ORDERED.

Dated:    October 24, 2019
          New York, New York

Edgardo Ramos, U.S.D.J.